UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                Plaintiff,                    REPORT & RECOMMENDATION

                                          11-CR-6083CJS

                v.

JAMES HENRY McAULEY, JR.,

                Defendant.
_____

## PRELIMINARY STATEMENT

        On February 4, 2014, this Court issued an Amended Report and Recommendation addressing motions by defendant James McAuley, Jr. ("McAuley") to dismiss the indictment and to suppress statements and tangible evidence. (Docket # 471). The Court reserved decision on McAuley's motions to suppress statements made and tangible evidence seized during his arrest on November 19, 2003, pending a further evidentiary hearing. (*Id.*). This Report and Recommendation addresses those motions.

## FACTUAL BACKGROUND

**I.    Prior Proceedings**

        Familiarity with this Court's February 4, 2014 Amended Report and Recommendation[1] (the "Report and Recommendation") is assumed. The factual findings therein

---

[1] The report and recommendation was originally issued on January 17, 2014, and scheduled the further evidentiary hearing on February 4, 2014. (Docket # 462). Immediately following the scheduled appearance on February 4, the Court issued the amended report and recommendation correcting the first full paragraph on page 2 of the original opinion. Other than the modification of that paragraph, the amended opinion is identical to the original opinion.

remain unchanged and will only be summarized as relevant to the issues addressed in this opinion.

In the Report and Recommendation, I concluded that the government had failed to establish that McAuley consented to a search of his person on November 19, 2003, and recommended that the district court grant his motion to suppress statements he made during that search. (Docket # 471 at 39-52). I determined that a further hearing was warranted to develop the record in order to make a recommendation on McAuley's motions to suppress the methamphetamine found during the search and his post-search statements. (*Id.* at 48-54). Specifically, I found that the record was not adequately developed to permit me to conclude whether, applying the doctrine of inevitable discovery, probable cause existed to arrest McAuley and whether McAuley would actually have been arrested in the absence of the discovery of the drugs (methamphetamine and marijuana) and the admissions made during the search. (*Id.* at 48-52). With respect to the post-search statements, I concluded that the record was likewise insufficient to make a recommendation on suppression of any statements. (*Id.* at 53).

This Court ordered the hearing to continue on February 4, 2014 "[i]n order to ascertain the information necessary to properly determine the applicability of the inevitable discovery doctrine to the facts of this case." (*Id.* at 52). On the date of the scheduled hearing, the government informed the Court for the first time that it would not be presenting any additional testimony to supplement the record. (Docket # 472 at 2). The government explained that, contrary to the Court's understanding of the government's position, it was not relying on the doctrine of inevitable discovery. (*Id.* at 3). Rather, it was contending that (1) even before Marx searched McAuley, probable cause existed to arrest McAuley for operating a vehicle with a

measurable amount of controlled substance metabolite in his system, in violation of Utah Code § 41-6a-517 ("DUI metabolite"); (2) Marx's search of McAuley was justified as a search incident to arrest even though it occurred before McAuley was formally arrested, *see Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980) ("we do not believe it particularly important that the search preceded the arrest rather than vice-versa" where probable cause to arrest existed); (3) because the search was not unlawful, the doctrine of inevitable discovery did not apply; and (4) the question of whether Marx *would* have arrested McAuley for DUI metabolite was therefore irrelevant. (*Id.* at 3-4, 11-13, 24-25).

The government argues that the issue of suppression of any post-search or post-arrest statements – like the issue of suppression of the methamphetamine – turns entirely on the issue of probable cause to arrest for DUI metabolite. Indeed, during the February 4 court appearance, the government expressly disavowed reliance on the attenuation doctrine to justify admission of the statements. (*Id.* at 18; Docket # 470). In other words, the government concedes that if McAuley's arrest was unlawful, his statements must be suppressed as fruit of that unlawful arrest.

Considering the government's explicit disavowal of both the inevitable discovery and attenuation doctrines, this Court declines to give any further consideration to those principles. Even if the government is correct that the only material issue is whether probable cause to arrest McAuley for DUI metabolite existed at the time McAuley was searched, the government still bears the burden of establishing that proposition. For the same reasons that I previously articulated, I find that the government has not met its burden.

During the February 4 court appearance, this Court reiterated the view expressed in the Report and Recommendation that the record is not sufficiently developed to determine the issue of probable cause to arrest. (Docket # 472 at 26-27). Specifically, the Court noted that the record lacks testimony from which to determine whether a reasonable officer, with Marx's experience and training in the recognition of persons under the influence of drugs, would have found probable cause to arrest McAuley prior to searching him. (*Id.* at 4-5, 28-29). In response to the Court's observations, the government asked to adjourn the hearing that had been scheduled for February 4, 2014 to offer further testimony from Marx. Over McAuley's objection, the Court granted the adjournment and scheduled the hearing for March 12, 2014. (Docket # 484).

By letter dated March 10, 2014, the government informed the Court that it was withdrawing its request to present additional testimony. (Docket # 500). Therefore, this Court will address the suppression motions on the record before it.

II.     **Factual Background**

The testimony elicited from Marx, the sole witness at the earlier evidentiary hearing on October 12, 2012, is described in detail in the Report and Recommendation and will not be repeated herein. In addition to that summary of Marx's testimony, the following testimony is relevant to the issues addressed in this opinion.

Marx did not testify concerning the substance of the training he received in order to become a certified drug recognition expert, nor did he provide any detailed testimony about his experience or skills in that position. When Marx first approached McAuley, in addition to his observations that McAuley appeared fidgety and nervous, had dilated pupils and was slurring his

speech, Marx also noted that his balance appeared to be "good." (Tr. 12, 19, 51, 54). While Marx testified that dilated pupils, particularly during daylight hours, may indicate drug use (Tr. 19, 65, 69-70), he also testified that a person may have dilated pupils or slurred speech for reasons unrelated to drug use and that individuals are often nervous when approached by a law enforcement officer (Tr. 40-41, 71). Marx testified that "as a [drug recognition expert] you know either a stimulant or marijuana is in his system based on his eyes." (Tr. 65).

        Marx did not testify about whether he believed prior to searching McAuley that McAuley was operating a vehicle with a measurable amount of controlled substance metabolite in his system. Although much of his redirect and recross examination concerned whether he would have arrested McAuley had he discovered the marijuana roach at McAuley's feet,[2] the prosecutor asked Marx one question that may have been intended to explore whether Marx would have arrested McAuley if neither drug had been discovered:

> Q:    If Mr. McAuley had told you he did not permit you to search him for the drugs and weapons as you had asked, would you have seized the methamphetamine in the envelope from his pocket?

(Tr. 72). Marx responded:

> A:    I believe so, yes. Based on the dilated pupils and the way he was acting, there would have been suspicion of drug metabolite use at a minimum, *and I would have followed up that way doing tests and requesting* – he probably would have been charged with that and we would have – they were on his person.

---

[2] At the time of the hearing, the Court anticipated that the government might argue that the discovery of the marijuana roach was lawful. In the Report and Recommendation, this Court found that the reasonable inference from the hearing was that the marijuana roach fell out of McAuley's pocket during the course of Marx's search. (Docket # 471 at 44-45). At the February 4 court appearance, the government agreed with that finding. (Docket # 472 at 17 ("[O]n that issue I think the Court came to the only fair conclusion, is that it must have come out during the search because I couldn't – I couldn't establish otherwise, frankly")).

(Tr. 72-73 (emphasis added)). Marx's testimony, which is somewhat unclear,[3] strongly suggests that Marx would have engaged in some type of testing before arresting McAuley for DUI metabolite had he not discovered the drugs.

## DISCUSSION

Probable cause to arrest exists when the arresting officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *United States v. Delossantos*, 536 F.3d 155, 158 (2d Cir.) (internal quotations omitted), *cert. denied*, 555 U.S. 1056 (2008). The Supreme Court has counseled that the probable cause standard is "a 'practical, nontechnical conception' that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)). In determining whether probable cause exists for an arrest, a reviewing court must examine the totality of circumstances surrounding the arrest, *Illinois v. Gates*, 462 U.S. at 230-31, judged from "the perspective of a reasonable police officer in light of his training and experience." *United States v. Delossantos*, 536 F.3d at 159. Probable cause requires no

---

[3] For instance, at another point during the hearing, Marx testified that a drug recognition expert performs tests when a person is suspected of being impaired, as opposed to merely having an amount of a controlled substance in his or her system. (Tr. 62). To the extent this testimony may be interpreted to suggest that a drug recognition expert's training and experience is not relevant to the probable cause analysis for a violation of the DUI metabolite statute, such testimony conflicts with caselaw interpreting the statute. *See State v. Hechtle*, 89 P.3d 185, 190-91 (Utah Ct. App. 2004) (officer lacked probable cause to arrest defendant for violation of DUI metabolite statute in part because officer neither performed field sobriety tests nor consulted drug recognition expert).

more and no less than a "reasonable ground for belief of guilt." *Maryland v. Pringle*, 540 U.S. at 371 (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)).

Although an officer's subjective state of mind is irrelevant to the probable cause analysis, *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007), "[a]n officer's experience and training . . . are to be taken into account such that . . . 'a trained and experienced officer will have probable cause in circumstances when the layman would not'" *United States v. $557,933.89, More or Less, in United States Funds*, 287 F.3d 66, 85 (2d Cir. 2002) (quoting 2 Wayne R. LaFave, *Search and Seizure* § 3.2(c) (4th ed. 2004)).  While the officer's experience and training is relevant to the probable cause analysis, the government bears the burden of establishing *how* such experience and training "bears upon the facts which prompted the officer to arrest." *United States v. Briggs*, 517 F. App'x 582, 583 (9th Cir. 2013) (concluding that the government failed to establish probable cause where "the government did not prove how, if at all, the officers' experience contributed to any probable cause determination") (internal quotation omitted); *United States v. Cervantes*, 703 F.3d 1135, 1139-40 (9th Cir. 2012) ("[w]hile [the officer's] training and experience are factors to be considered, 'it is incumbent upon the arresting or searching officer to explain the nature of his expertise or experience and how it bears upon the facts which prompted the officer to arrest or search'[;] . . . [c]onclusory statements and a general claim of expertise will not suffice") (quoting 2 LaFave, *Search and Seizure* § 3.2(c)) (internal citation omitted); *Rivera v. Murphy*, 979 F.2d 259, 264 (1st Cir. 1992) ("[t]he experience and training of a police officer are, of course, factors to be considered in the determination of probable cause, but, the relevance [of such experience and training] in a particular case must be

sufficiently conveyed so that ... it can be understood by the average reasonably prudent person") (internal quotation omitted) (alterations in original).

The government contends that it has established that Marx had probable cause to arrest McAuley for violating Section 41-6a-517 of the Utah Code, which provides:

> [A] person may not operate or be in actual physical control of a motor vehicle within this state if the person has any measurable controlled substance or metabolite of a controlled substance in the person's body.

Utah Code Annotated § 41-6a-517.  According to the government, Marx's observations of McAuley's dilated pupils, slurred speech and nervous behavior, coupled with the Brutons' report and Marx's own training and experience, provided adequate probable cause to arrest McAuley for violation of the Utah statute.  Despite affording the government two opportunities to develop the record in order to allow me to assess its proposition, the government chose to offer no additional testimony.  In the absence of any further evidence, I adhere to my view that the record as it has been developed does not satisfy the government's burden of proof.

First, as the Report and Recommendation noted, the record is devoid of any testimony by Marx that his pre-search observations and information led him to believe that McAuley was operating his vehicle with a measurable amount of controlled substance metabolite in his system.  Marx was not asked that question, and he did not address it.  Rather, his testimony was confined to the issue of probable cause to arrest based upon the discovery of the drugs and McAuley's verbal admissions during the search.[4]

---

[4] Specifically, Marx provided the following response to the question, "What were the facts that led you to charge McAuley with DUI metabolite":

> Based on his eyes being dilated.  You know, talking to him, then as a [drug recognition expert] you know either a stimulant

Moreover, even if such a conclusion could be inferred from Marx's testimony, his testimony does not explain how his training and experience as a drug recognition expert informed such a conclusion. While he testified that dilated pupils may indicate drug use, he also testified that dilated pupils and the other characteristics McAuley displayed may have benign explanations. He admitted that McAuley did not seem to be impaired. Moreover, at one point in his testimony, Marx even suggested that if he had discovered only the marijuana roach and not the methamphetamine, he would have investigated further before deciding to arrest McAuley for DUI metabolite. (Tr. 86). On this record, it was incumbent upon the government to explain whether and, if so, why a drug recognition expert like Marx would have believed before searching him that McAuley – even though he did not appear impaired – had a *measurable* amount of controlled substance metabolite in his system. As this Court observed at the February 4 court appearance, it does not have the experience from which to make that conclusion. Again, the Court invited additional testimony on that very issue. The government declined to offer it.

As courts routinely acknowledge, drug recognition experts possess unique skills designed to assist them in identifying whether, and to what extent, an individual may be under the influence of a substance other than alcohol. *See*, *e.g.*, *Wheeler v. Lynn*, 2012 WL 1833672, *2 (W.D. Mo. 2012) ("[d]rug recognition experts check a suspect's blood pressure, pulse, and temperature because certain drugs cause the body to do things involuntarily"); *Green v. Euler*, 2010 WL 415309, *1 (M.D. Fla. 2010) ("[drug recognition expert] training includes evaluations

---

        or marijuana is in his system based on his eyes. His behavior,
        his admission that he would test positive, the drugs on scene.
        Basically those things there.

(Tr. 65).

of a suspect's eyes, their bodily movements and speech to appropriately detect and categorize impairment from drugs"); *United States v. Everett*, 972 F. Supp. 1313, 1316-17 (D. Nev. 1997) (drug recognition expert follows a twelve-step protocol that includes, *inter alia*, pulse readings; eye examinations, including nystagmus and convergence tests; motor skills testing; blood pressure and temperature readings; pupil measurements under various lighting conditions; muscle rigidity examinations; and, interrogation). Marx did not testify concerning *how* any of his training, experience or skills as a drug recognition expert led him to believe *before the search* that McAuley had a measurable amount of controlled substance metabolite in his system. Indeed, as stated earlier, Marx did not even testify *if* he believed before searching him that McAuley had violated the DUI metabolite statute. Thus, this Court is unable to assess how Marx's training and experience informed his pre-search evaluation of McAuley. *See United States v. Ten Thousand Seven Hundred Dollars and No Cents in United States Currency*, 258 F.3d 215, 231 (3d Cir. 2001) (concluding that test results "cannot be considered a factor weighing in the government's favor in the overall probable cause analysis" in the absence of information in the record "sufficient . . . to guide [the court] in evaluating the evidentiary significance of the test results"); *United States v. Ho*, 94 F.3d 932, 937-38 (5th Cir. 1996) (no probable cause where "the government elicited almost no testimony from which to gauge the extent of [the officer's] knowledge and experience in the area of credit card fraud"); *State v. Hechtle*, 89 P.3d at 190-91 (government may not establish probable cause unless it can show that officer acted upon more than "mere suspicion" or "hunch" that suspect had measurable amount of controlled substance in his body; "[e]ven if we were persuaded to accept the [government's] position that the condition of [defendant's] eyes and tongue are presumptively suggestive of

marijuana use, nothing in the record indicates either how long these conditions are sustained or how long measurable quantities of marijuana remains in the system as required by the statute").

For these reasons, I find that the government has failed to establish that Marx had probable cause to arrest McAuley on November 19, 2003 prior to the search. Accordingly, I recommend that the district court suppress the methamphetamine seized during the search and any statements made by McAuley during or after the search, including any post-arrest statements.

## CONCLUSION

For the reasons stated above, I recommend that the district court grant McAuley's motion to suppress the methamphetamine seized on November 19, 2003. (Docket # 234). I further recommend that the district court grant McAuley's motion to suppress statements he made on November 19, 2003 during or subsequent to the search of his person and subsequent to his arrest.

                                          *s/Marian W. Payson*
                                          MARIAN W. PAYSON
                                          United States Magistrate Judge

Dated: Rochester, New York
       March   19   , 2014

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

    **ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

    **ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.[5]

    The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See*, *e.g.*, *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

    **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

    The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.**

    Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

                                            *s/Marian W. Payson*
                                               MARIAN W. PAYSON
                                             United States Magistrate Judge

Dated: Rochester, New York
         March __19__, 2014

---

[5] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).